[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action for dissolution was brought by the plaintiff wife against the defendant husband in May of 1995. The parties were married in 1971 in Arlington, Virginia. There are two children issue of the marriage, Jay W. born January 29, 1972 and Christopher born June 8, 1982. Both children live with the plaintiff.
The plaintiff is 45 years old and the defendant is 46 years old. The marriage has broken down irretrievably with no hope of reconciliation. Both parties agree that they are equally responsible for the breakdown.
The plaintiff is residing in the marital home in Westport with both sons. The defendant left the marital home in May of 1993. He paid for all of the family bills after he left the family home until February of 1996 when he began paying an amount apparently agreed upon by the parties of $6666.66 per month and he has continued to do that until this time.
In February of 1995, the defendant lost his job as publisher of Parents Magazine when it merged with another magazine. Since that time, he has sought other employment in the publishing field but has not been successful. Beginning in November of 1995, he obtained a license as an insurance broker and has been working for the Northwestern Mutual Life and Disability Insurance Company in Fairfield. As of the date of parties' briefs in March or April of 1996, he has not sold a policy.
The plaintiff has been working full time as a teacher's aide in the Westport school system earning $8.85 an hour. She has an A.B. in special education but most of her jobs during the marriage has been either as a teacher's aide or as a substitute teacher.
While the defendant did not have a college degree, he did attend BMI for three years and he has had a remarkably successful employment record until he was laid off in 1995. He did have one period of thirteen months of unemployment prior to working for Parents Magazine. In all of his positions over the last three or CT Page 5114-MMMM four years before his lay off he was earning over $100,000 per year. At Parents Magazine it was over $200,000 a year.
Upon leaving Parents Magazine, he was given rather substantial benefits including severance pay, deferred compensation, supplemented SIRP, vacation pay and a bonus. From these funds, he has been able to pay the household expenses since February of 1996 in the amount of $6,666.66 per month. He has also paid his own expenses which amount to $3,325.00 a week. These include both his living expenses and his office expenses and his job searching expenses.
By stipulation, the parties have agreed to the disposition of some of the assets, to wit: the 1989 Acura to the plaintiff, 1146 shares of First United Corporation to the plaintiff, life insurance on the wife to the plaintiff, $6,000 from the 1994 income tax refund to the plaintiff and the plaintiff's teachers' pension in the amount of $78.88. Items which the defendant is to keep or obtain are the 1989 Chevrolet Suburban and the following securities: ten shares of IBM, 200 shares of Duke Power, 80 shares of Southern Connecticut; the cash value of life insurance on the defendant's life; $6,000 from the 1994 income tax refund; and the 1989 Mazda. The Chase joint bank account is to be closed and the balance in that is to go to the plaintiff. The parties will file a joint tax return for 1995 and share the expenses of preparation but liability for any additional tax is to be determined by the court.
Deducting these assets from the total assets of the parties leaves a total of $511,531 which includes $111,892.29 as the balance in the Schwab account which may not be accurate as of this date. This total also includes the value of the marital home.
While both parties admit they were equally responsible for the breakdown of the marriage, some of the other items of §46b-81 of the General Statutes must also be considered, to wit: (1) the ability of each party to acquire assets, the length of the marriage, the education and employability and sources of income of the parties and the contribution each has made to the marriage and the marital estate.
Both parties are of similar age. This was a rather long marriage, over 24 years. The ability of the plaintiff to acquire future assets would appear to be much less than that of the CT Page 5114-NNNN defendant who despite fewer years of education has managed to earn substantial amounts in the publishing business as an executive. The plaintiff's occupation as a teacher's aide would not enable her to earn much more than she is earning now unless she goes back to school and gets an additional degree. At the present time, the husband's past is much more optimistic in predicting his future prospects than is his present. However, the past does indicate his abilities while the present economic situation may also indicate the unlikelihood of his obtaining his prior income. It would appear that his experience alone would enable him to obtain future assets much more readily than his wife.
Both parties have maintained a comfortable standard of living which would have to be very much modified if the defendant does not get a job and if the plaintiff insists on living in the same house instead of selling it.
One of the major elements which the court considers along with the others in § 46b-81 of the General Statutes is the contribution each has made to the marriage. It does appear that the wife has been the chief caretaker and homemaker and she has also worked most of the marriage and is presently doing so. While her income has not been substantial, it has certainly been helpful particularly during the time the defendant was unemployed for thirteen months prior to his obtaining the position with Parents Magazine.
In the court's opinion the plaintiff, who continues to have the care of the minor son although the child support agreed on until the defendant begins to work is $1.00 a year, should receive fifty-five (55%) percent of the total assets which were not included in the stipulation. According to the court's figures, that would amount to $281,342.05 of which $87,908.80 is a half interest in the house.
Having considered all of the elements in § 46b-81 of the General Statutes as set forth above, the court makes the following findings and orders.
1. The parties were married in 1971 in Arlington, Virginia. One of the parties has lived in the state of Connecticut for at least one year prior to the bringing of this action.
2. The marriage has broken down irretrievably with no hope of CT Page 5114-OOOO reconciliation and it is hereby dissolved.
3. There are two children issue of the marriage, one of whom, Christopher, was born in June of 1982 and the other, Jay W., now an adult, was born in 1972 and has an I.Q. of 69. Both boys live with the plaintiff.
4. The parties have entered into a stipulation dated March 19, 1996, which provides for custody of the minor child Christopher to be with the plaintiff with the defendant having reasonable rights of visitation on reasonable notice of at least 24 hours in advance. It also provides for child support and alimony of $1.00 per year until the defendant obtains employment income and then in accordance with the child support guidelines. It further provides for medical insurance to be maintained by the defendant and for the distribution of certain property and assets of the parties which are set forth above.
 The court approved this stipulation and it is annexed and forms a part of this opinion and orders that its provisions be made a part of this decision.
 One of the provisions of this stipulation provides for child support at $1.00 a year until the defendant begins to earn money from employment. The court approved this as being within the deviations permitted by the child support guidelines particularly that entitled "Coordination of Total Family Support" which appears on page 14 of the Child Support and Arrearage Guidelines issued by the Commission for Child Support Guidelines effective June 1, 1994. The court finds that the determination here of the distribution of the assets and the tax implications will not result in a lesser economic benefit to the child although it is difficult to determine what the guidelines would require if the guidelines were applied given the way in which the defendant has received his payments in lump sums.
5. The defendant shall contribute $5,000 towards the wife's legal fees since the money which he used for his attorney's fees came out of the total family assets.
6. The defendant shall be responsible for the taxes due on the 1995 tax return and any refund shall be divided equally between them. Any additional tax liability shall be the CT Page 5114-PPPP responsibility of the defendant.
7. All the other assets of the parties not included in the stipulation and excluding the marital home shall be allocated fifty-five (55%) to the plaintiff and forty-five (45%) percent to the defendant. Given the nature of the assets, stocks and bonds, etc., the court orders the parties to determine which assets each should have within these percentages. The court will retain jurisdiction should there be no agreement.
7. The plaintiff shall have exclusive possession of the marital home and shall have the right to sell it at any time during the next four years. However, if she sells it, she must pay the defendant forty-five (45%) percent of the net proceeds from any such sale, and upon her doing so, the defendant shall convey to her all his right, title and interest in the property. After four years, the plaintiff shall sell the house and give the defendant forty-five (45%) percent of the net proceeds or shall buy him out at a price that is not less than the forty-five (45%) percent of the present value of the property.
8. Each party shall be responsible for her or his liabilities as set forth on the financial affidavits.
9. The plaintiff shall continue her medical insurance coverage under COBRA at her cost if she so chooses. The defendant shall cooperate with the plaintiff in continuing the COBRA coverage.
10. The plaintiff shall have her maiden name of Rozann Dashiell restored to her.
11. An order for a conditional wage execution shall issue effective on the date the plaintiff receives employment income.
It is so ordered.
MARGARET C. DRISCOLL, STATE TRIAL REFEREE CT Page 5114-QQQQ